**D. L. PIAZZA CO. et al. v. WEST COAST LINE, Inc. et al.**

United States District Court
S. D. New York.

June 30, 1953.

McNutt & Nash, New York City, J. Newton Nash, New York City, of counsel, for plaintiff.

Stanley W. Schaefer, New York City, William M. Kimball, New York City, of counsel, for defendants West Coast Line, Inc., Wessel, Duval & Co., Inc., and J. Lauritzen.

J. Edward Lumbard, Jr., U. S. Atty., New York City, Edward P. Hodges, Acting Asst. Atty Gen., James E. Kilday, William J. Hickey, Sp. Assts. to Atty. Gen., for the United States.

Max E. Halpern, Asst. Gen. Counsel, Joseph A. Klausner, Chief, Regulation Branch, Edward Aptaker, Washington, D. C., Attorney, for the Federal Maritime Board.

DIMOCK, District Judge.

This is an action to set aside, annul, and suspend orders of the Federal Maritime Board denying plaintiff a substantial part, but not all, of reparations sought to be recovered by it from the private defendants in this action.

The defendants, United States and Federal Maritime Board, move to dismiss the action and the main ground is that this court lacks jurisdiction over the subject matter. The only question seems to be whether plaintiff may obtain review of the Board's order under Section 30 of the Shipping Act, 46 U.S.C. § 829, in a district court or must proceed under Section 2 of Public Law 901, 81st Cong., 64 Stat. 1129, 5 U.S.C. § 1032, in a court of appeals.

On May 5, 1948, plaintiff filed with the Federal Maritime Board's predecessor, the U. S. Maritime Commission, a complaint alleging that West Coast Line, Inc., Wessel, Duval & Co., Inc., and J. Lauritzen (private defendants in this action) were operating under the name of West Coast Line as a common carrier by water in the transportation between the United States and South America; that said parties operating as West Coast Line in April 1946 consummated an oral agreement with the plaintiff whereby certain transportation was to be performed for the plaintiff, and that the West Coast Line failed to perform its obligations with respect to said agreement in certain particulars as set forth in more detail in paragraph 9 of the complaint; that by reason thereof plaintiff had been subjected to the payment of transportation rates and charges which were discriminatory,

prejudicial, and unfair to the plaintiff and in violation of Sections 14, 16 and 17 of the Shipping Act of 1916, as amended, 46 U.S. C. §§ 812, 815 and 816; and that plaintiff had been damaged to the extent of $51,132.-69. In its complaint plaintiff prayed that the Commission enter an order commanding the above-named parties to cease and desist from violations of the Shipping Act of 1916, as amended, and to pay the sum of $51,132.-69 with interest to the plaintiff as an award of reparation for the unlawful rates and charges collected.

As set forth in plaintiff's complaint, it further appears that on July 9, 1951, the Federal Maritime Board, after hearings before it and its predecessor, the U.S. Maritime Commission, entered a report and order which directed J. Lauritzen to pay the amount of $2,500 to the plaintiff in full satisfaction of the damages it alleged it had incurred, and that in an order dated December 11, 1951, the Federal Maritime Board denied a petition for reargument and reconsideration filed by the plaintiff. The latter order directed J. Lauritzen to pay the $2,-500 reparation within 15 days.

As appears from pleadings filed on behalf of the private defendants in this action, a tender of the $2,500 was made on behalf of J. Lauritzen to the plaintiff by letter dated December 17, 1951. By letter dated December 31, 1951, a check in that amount was returned by plaintiff's counsel with the statement that said counsel was proceeding upon instructions from the plaintiff to initiate proceedings to obtain appropriate judicial review of the order of the Federal Maritime Board of December 11, 1951.

This action was filed by plaintiff on December 10, 1952. Plaintiff alleges that the report and orders of the Federal Maritime Board heretofore described are erroneous, invalid, unlawful, and void. Plaintiff prays that the orders of the Federal Maritime Board entered on July 9, 1951 and December 11, 1951, be set aside, annulled, and suspended.

Plaintiff contends that this court has jurisdiction over this action under Section 30 of the Shipping Act, the pertinent parts of which provide, "In case of violation of any order of the commission for the payment of money the person to whom such award was made may file in the district court * * * a petition or suit setting forth briefly the causes for which he claims damages and the order of the commission in the premises. * * * Judgment may be entered in favor of any plaintiff against the defendant liable to that plaintiff." Payment in compliance with the order has been tendered and refused by plaintiff. It is perfectly clear in this case that there has been no violation of the administrative order and it is not contended otherwise by plaintiff. To found jurisdiction, in this case, then, under that section would require a construction of the words of the section that I do not think they can bear. Plaintiff argues, however, that this is just what the Supreme Court has done in construing a closely analogous statute, 49 U.S.C. § 16(2), relating to orders of the Interstate Commerce Commission which permits suit "[i]f a carrier does not comply with an order for the payment of money * * *." The case cited by plaintiff is United States v. I. C. C., 337 U.S. 426, 69 S.Ct. 1410, 93 L. Ed. 1451. There, a shipper, the United States, sought to review an order of the Interstate Commerce Commission which denied reparations for exaction of an allegedly unlawful railroad rate. The main question in that case was whether the shipper was entitled to any judicial review of the order and the Supreme Court expressly held that judicial review may be had by the shipper under what was at the time in question 28 U.S.C. (1946 ed.) § 41(28) and is now 28 U.S.C. § 1336. That section provides:

"Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission."

The Supreme Court went on to consider whether the proceeding should be taken before one judge or three. The court was faced with the fact that 28 U.S.C. (1946 ed.) § 41(28) which authorized the proceeding was derived from the Urgent Deficien-

cies Act, 38 Stat. 208, 219, 220, which provides for a three-judge district court. The court nevertheless held that it should be had before a single-judge district court. In this connection, the court said:

"Had the Commission made an award to the Government it could have filed a civil suit to recover money damages under the provisions of 49 U.S.C. § 16(2), 49 U.S.C.A. § 16(2). That section provides that such a suit 'shall proceed in all respects like other civil suits for damages * * *'—that is, before one district judge. And an appeal from a judgment in such a case goes to the Court of Appeals. The same one-judge trial and appeal procedure available for enforcement of an award order would appear to be an equally appropriate and adequate tribunal for adjudication of validity of a Commission order denying reparations. For actions to enforce Commission orders awarding reparation, and actions to challenge Commission orders denying reparations, basically involve the same parties, the same disputes, the same claims for money damages, and the same statutes. We think the orders in both instances should be reviewed in the same one-judge tribunal." 337 U.S. 426, 443, 69 S.Ct. 1410, 1419.

I do not read the Supreme Court's decision as concluding that the district court has jurisdiction in such cases under 49 U.S.C. § 16(2). In the preceding discussion, the Supreme Court took pains to explain why it decided that the procedure under the Urgent Deficiencies Act was not appropriate for such a case. In view of the express holding mentioned above, I am satisfied that the Supreme Court founded jurisdiction under what is now 28 U.S.C. § 1336 rather than 49 U.S.C. § 16(2) and merely decided that that jurisdiction should be exercised according to the same procedure under which jurisdiction is exercised in cases under 49 U.S.C. § 16(2) instead of according to the procedure set up by the Urgent Deficiencies Act.

I therefore conclude that plaintiff may not proceed in the district court under sec-

tion 30 of the Shipping Act to review orders such as that here involved.

█ Defendants not only deny the application of section 30 of the Shipping Act but contend that the courts of appeals have exclusive jurisdiction to review such orders, relying upon 5 U.S.C. § 1032. The relevant parts of that section provide: "The court of appeals shall have exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of, all final orders * * * and (c) such final orders of the United States Maritime Commission or the Federal Maritime Board * * * as are now subject to judicial review pursuant to the provisions of section 830 of Title 46." To determine then what orders come within the purview of this section, one must turn to Section 830 of Title 46. That section reads as follows:

"The venue and procedure in the courts of the United States in suits brought to enforce, suspend, or set aside, in whole or in part, any order of the commission shall, except as otherwise provided, be the same as in similar suits in regard to orders of the Interstate Commerce Commission, but such suits may also be maintained in any district court having jurisdiction of the parties."

The types of actions covered by this section seem to be practically the same as those covered by the section upon which the Supreme Court founded jurisdiction in United States v. I. C. C., supra. This, plus the expressed intent of Congress in Section 830 that orders of the U. S. Maritime Commission be reviewed in the same manner as orders of the Interstate Commerce Commission, leads me to conclude that an order denying a shipper reparations comes within the meaning of Section 830. From that conclusion, I think it must follow that the courts of appeals have exclusive jurisdiction over such orders under 5 U.S.C. § 1032, quoted above, which takes in all orders subject to review under Section 830. Plaintiff's argument in opposition to this is, in effect, that the legislative history of the statutory provisions of which 5 U.S.C. § 1032 is a part, shows that the Congres-

sional intent was to change the review procedure only in cases where the review was previously committed to a three-judge district court. Plaintiff refers to the committee report in 1950 U.S.Code Cong.Service pp. 4303, 4304. The committee explained an amendment removing from the scope of this legislation certain administrative orders by saying that such orders are now reviewable by the Court of Appeals for the District of Columbia and on certiorari by the Supreme Court. It then said, "since it does not involve the cumbersome review by three judge district courts with direct appeal to the Supreme Court, which it is the purpose of the bill to cure, it is not germane to the present legislation." While there is no doubt that it was one of the purposes of this legislation to eliminate review of administrative orders by three-judge district courts in certain cases, there is no indication in the committee report that the legislation was to apply only to those in which review was previously had before a three-judge district court. Indeed, the committee was careful to say "in many cases in which hearing in the district courts by panels of three judges is now required there will be a large saving of judicial time and energy." 1950 U.S. Code Cong.Service pp. 4303, 4306. The clear implication from that is that it was recognized that cases theretofore heard by a single-judge district court may be included within the scope of the legislation. Beyond this the committee's report states that this legislation substitutes, for the present mode of review, a review by appropriate courts of appeal upon the record made before the administrative agency with further review on certiorari by the Supreme Court, in its discretion. It then said:

"This is the pattern established for review of orders of the Federal Trade Commission in 1914 (15 U.S.C. 45c) and followed by other laws since then in relation to many other agencies, including the Securities and Exchange Commission, the Bituminous Coal Commission, and the National Labor Relations Board. It is the more modern method and is generally considered to be the best method for the review of orders of administrative agencies." 1950 U.S.Code Cong.Service pp. 4303, 4306.

Thus it would appear that Congress also had the intention of following the trend in the direction of providing for review of administrative orders by courts of appeal. There was but one instance mentioned in the committee's report in which certain orders were left to be reviewed according to the existing procedure. That procedure, however, already provided for review by a court of appeals as was pointed out in the discussion above.

My conclusion therefore is that the construction of the legislation and its legislative history both require that an action such as this be heard by the court of appeals and since that jurisdiction is exclusive, it may not be heard by a district court.

Motion to dismiss granted.